IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MODULAR SPACE CORP, fka RESUN LEASING, INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SIERRA KINGS HEALTH CARE DISTRICT, a California local public entity,<br><br>　　　　Defendant. | CV F 07-1199   AWI GSA<br><br>ORDER ON DEFENDANT'S MOTION TO DISMISS COMPLAINT PURSUANT TO F.R.C.P. 12 (B)(6)<br><br>Doc. # 12 |

　　　　This is an action in diversity for declaratory relief by plaintiff Modular Space Corporation, formerly known as Resun Leasing, Inc. (hereinafter "Plaintiff") against defendant Sierra Kings Health Care District ("Defendant").  Plaintiff is a Pennsylvania construction firm that entered into a contract with Defendant to provide specified infrastructure work on a hospital expansion and improvement project at Defendant's hospital birthing center.  For reasons not related to this action, Defendant terminated the construction contract with Plaintiff for cause and filed a claim against Plaintiff's performance bond.  Plaintiff's suit against Defendant seeks declaratory judgment that the construction contract and a subsequent change order between Plaintiff and Defendant were void *ab initio*.

　　　　In the instant motion, Defendant moves to dismiss the complaint on the ground that Plaintiff's challenge to the validity of the construction contract and the subsequent change

order is time-barred pursuant to California Code of Civil Procedure, section 860. Diversity jurisdiction exists pursuant to 28 U.S.C., section 1332. Venue is proper in this court.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The complaint in this case was filed on August 16, 2007. The instant motion to dismiss was filed on October 10, 2007, Plaintiff's opposition was filed on November 2, 2007, and Defendant's reply was filed on November 9, 2007. The matter was taken under submission as of November 19, 2007.

Defendant is a local health care district organized pursuant to California Health and Safety Code, section 3200 et seq. Defendant operates a public hospital in Reedley, California named "Sierra Kings District Hospital" (hereinafter "Hospital"). On March 9, 2006, Defendant past a resolution authorizing the Hospital's Chief Executive Officer to negotiate and enter into a contract for construction of an addition to the hospital's birthing center and emergency room/radiology/clinic areas (the "Project") without advertisement or inviting other contractors to bid.[1] On or about August 25, 2006, the Hospital's CEO, or his designee, signed a purported cost plus contract (the "Contract") for a maximum price of $2,496,185.40. On or about November 15, 2006, the Hospital's CEO signed a change order (the "Change Order") increasing the scope of Plaintiff's work and increasing the Contract maximum price by $9,449,675.50 to a total of $11,945,860.90. At Defendant's insistence, Plaintiff purchased payment and performance bonds in the penal sum of the total maximum price of the Contract after the Change Order.

The complaint alleges that Plaintiff commenced work on the Project in September 2006, and continued work on the Project through April 25, 2007, incurring costs of approximately $800,000 under the Contract and $500,000 under the Change Order. On April 25, 2007, Defendant issued a notice of termination of the Contract for cause. Immediately

---

[1] The resolution, submitted as exhibit "A" to the complaint indicates that Defendant had previously advertised for and received bids, but the bids received were non-conforming to the bid specifications.

2

1  thereafter, Defendant filed a claim against Plaintiff's performance bond. Plaintiff has
2  submitted claims for payment of work done before the termination of the Contract, but has
3  not received payment. The issue of whether termination of the Contract was proper is
4  currently in arbitration. However, Plaintiff has requested the arbitration be stayed pending
5  the outcome of this action.

6  The resolution of the instant motion to dismiss turns, at least in part, on the nature of
7  the funding for the Project. Defendants alleged the following with respect to the funding for
8  the Project in their motion to dismiss. The alleged facts are not disputed unless otherwise
9  noted.

> The [P]roject is being funded through a combination of revenue bonds and general obligation bonds, consisting of : (a) general obligation bonds issued in 2003, (b) revenue bonds issued in 2006, and (c) general obligation bonds issued in 2007. With regard to the revenue bonds Resolution No. 208 of the Board of Directors of the District, adopted June 8, 2006, authorized the issuance of revenue bonds, in an amount not to exceed $9,000,000, of which an amount not to exceed $4,000,000 was allocated for "financing the remodeling, expansion, improvement, and equipping of the health facilities owned and operated by the District and for reimbursing the District for costs thereof previously made . . ." [citations to requests for judicial notice omitted]. The revenue bonds were issued in two series, with Series A in the amount of $5,940,000 closing on July 31, 2006, and Series B in the amount of $1,400,000 closing on September 11, 2006. [Citations to requests for judicial notice omitted].
>
> The purpose of the bond proceeds, as well as the relationship between the completion of the Project and the repayment of the bonds, is set forth in the Final Official Statement for each of the Series A and Series B bonds as follows:
>
> Firstly, the proceeds of the revenue bonds were intended to be used for the construction of the [H]ospital addition which was the subject of the Construction Contract [with Plaintiff] and the [C]hange [Or]der. [Citation to requests for judicial notice omitted]. In that regard the "project Description" at page 8 of the Final Official Statements describes the project being financed as including ". . . an approximately 8,000 square foot Birthing Center expansion and an approximately 16,000 square foot expansion of the Emergency Department, radiology Department, lobby and laboratory . . ." and specifically refers to [Plaintiff Construction Company].
>
> Secondly, the Final Official Statements each state, at Page 1, that the repayment of the bonds is to be solely from the District's Revenues, and that the bonds are secured by a pledge of the Revenues. [Citation to request for judicial notice omitted]. The final Official Statements, at Page 9, each refer to

3

> the Indenture of Trust for the definition of the term "Revenues," which term is defined at Page 12 of the Indenture of Trust as "all revenues, income, receipts and moneys received by or no behalf of the District, excluding gifts, grants, bequests, donations and contributions . . ." [Citations to requests for judicial notice omitted]. As such, "Revenue" is the operating income of the District.

Doc. # 12-3 at 8:1 - 9:3.

## DISCUSSION

The resolution of Defendant's motion to dismiss turns on whether the construction Contract between Plaintiff and Defendant is subject to validation pursuant to section 860 et seq. of the California Code of Civil Procedure (hereinafter "section 860"). Pursuant to section 53511 of the California Government Code (hereinafter "section 53511):

> A local Agency may bring an action to determine the validity of its bonds, warrants, contracts, obligations or evidences of indebtedness pursuant to [section 860] of the Code of Civil Procedure.

Pursuant to section 860, a validation action may be brought by a public agency "within 60 days of 'the existence of any matter which under any other law is authorized to be determined pursuant to [the validation statutes].'" Kaatz v. City of Seaside, 143 Cal.App.4th 13, 29 (6th Dist. 2007) (quoting section 860). "And where the public agency does not initiate a validating proceeding under section 860, 'any interested person may bring an action within the time and in the court specified by Section 860 to determine the validity of such matter.' [Citation.]" Id. at 30 (quoting California Code of Civil Procedure, section 863). However, an individual validation action (sometimes referred to as an "inverse validation action") is subject to the same 60-day time limit as a validation action by a public entity. California Code of Civil Procedure, section 869; Kaatz, 143 Cal.App.4th at 30. "Thus, insofar as section 863 provides that an interested person 'may' bring a validating proceeding, the statute 'seems innocuous enough . . . section 869 says he *must* do so or be forever barred from contesting the validity of the agency's action in a court of law.' [Citation.]" Id. (quoting City of Ontario v. Superior Court, 2 Cal.3d 335, 341 (1970)).

There is no dispute in this case that Plaintiff did not bring the instant action

challenging the validity of the Contract or the Change Order within the 60-day time limit imposed by section 869. Thus, there is no doubt that, if the Contract is an agency action that is subject to the validation process pursuant to section 53511, Plaintiff's action is time-barred and Defendant is immunized from any challenge to the validity of the Contract.

The validation procedures provided by California Code of Civil Procedure, sections 860 through 870 serve two basic functions. First and foremost, sections 860 through 870 are intended "to ensure the ability of public agencies to obtain timely validation of their bonds." Kaatz, 143 Cal.App.4th at 39. Second, these sections are intended to "'"clarify the time within which an appeal may be taken in a validation proceeding, and thus accelerate the finality of these proceedings." [Citation.]' The Senate committee analysis noted that *validation actions are most commonly used to secure a judicial determination that a government entity's proposed issuance of bonds is valid.*" Id. (italics in original). "Assurance as to the legality of the proceedings surrounding the issuance of municipal bonds is essential before underwriters will purchase bonds for resale to the public," Friedland v. City of Long Beach, 62 Cal.App.4th 835 842 (2nd Dist. 1998).

The validation procedure does not identify what actions of public entities are subject to validation proceedings. Government Code section 53511 is the section referenced in the instant case as authorizing the validation procedures of sections 860 through 870 with respect to the Contract and Change Order. Although Government Code section 53511 places no express restriction on the word "contract," California courts have determined that the legislative history of the statute necessitates a restricted meaning. See City of Ontario, 2 Cal.3d at 343-344 (reasoning a restricted interpretation of "contracts" in section 53511 based on stated legislative intent, statutory context, and legislative history). In general, California courts have held that the "contracts" referred to by section 53511 are restricted to those contracts involve financing and financial obligations. Friedland, 62 Cal.App.4th at 843. Contracts, such as vendor contracts, that do not involve bonds, indebtedness or financing are

5

not normally considered subject to validation. Fontana Redevelopment Agency v. Torres, 153 Cal.App.4th 902, 909 (4th Dist. 2007).

Defendant relies primarily on Graydon v. Pasadena Redevelopment Agency, 104 Cal.App.3d 631 (2nd Dist. 1980) ("Graydon") for the proposition that the Contract and the Change Order are agency actions that fall within the scope of actions subject to validation pursuant to section 53511. In Graydon a taxpayer filed an action for mandamus seeking to invalidate a construction contract that was awarded without competitive bid for the construction of an underground parking facility over which a shopping area would be built by other contractors as part of a community redevelopment plan. Id. at 634-635. The project in Graydon was financed by tax allocation bonds that were to be repaid partly from tax increments generated by the Retail Center that was to be built on top of the underground parking structure. Id. at 638.

After hearing and consideration of facts submitted by the parties, the Graydon court issued findings of fact and conclusions of law wherein the court found, "[t]he ability of the [redevelopment agency] to operate and accomplish its statutory purpose and the purposes of the [redevelopment] Plan would be substantially impaired unless the [no-bid construction contract being contested] is subject to a prompt validation procedure." Id. at 639. Based on the trial court's factual determinations, the appellate court in Graydon concluded the bonds for the construction project:

> ". . . were intimately and inextricably bound up with the award of [the] contract.  Delay in the completion of the retail center because of the delay which would inevitably have resulted if the contract had been competitively bid would have a direct bearing on the financial ability of [the redevelopment agency] to meet its financial obligations and statutory purpose.

Id. at 646. Based on this conclusion the Graydon court held the no-bid contract at issue in that case was subject to the validation procedure commencing with section 860. Id.

Defendant's basic argument is that the factual situation in the instant action places the Contract and Change order within the scope of Graydon and the more recent case of

1  California Commerce Casino, Inc. v. Schwarzenegger, 146 Cal.App.4th 1406 (2nd Dist.
2  2007).  In both these cases, the contracts being challenged created either directly, as in
3  California Commerce Casino, or indirectly, as in Graydon, revenue streams that funded
4  repayment of bonds.  As such, the contracts in these cases were found by their respective
5  courts to be "'inextricably bound up' with the use of the income stream created by
6  [contractual agreements] and with the bonds to be issued."  California Commerce Casino,
7  146 Cal.App.4th at 1430 (quoting Graydon, 104 Cal.App.3d at 646).  Defendant contends the
8  Contract being challenged in this case comes withing the scope of contracts subject to the
9  validation procedure because, as in Graydon and California Commerce Casino, the Contract
10 and Change order are " inextricably bound up" with the revenue stream that will be generated
11 to guarantee payment of that portion of the Project being funded by the revenue bonds.  This
12 court disagrees.
13         First, the court must conclude, based on the fairly small number of cases interpreting
14 the issue of applicability of the validation procedure to contracts, that each case is based on
15 an individualized examination of the demonstrated effects of the contract at issue on the
16 income stream that secures the bond being issued.  For example, in Graydon there are
17 findings of fact that both the trial court and appellate court rely upon to show that the
18 challenge to the contract will result in a delay in the project of a specified number of months
19 that will result in a loss to the revenue stream of an identified amount of money.  See
20 Graydon, 104 Cal.App.3d at 645-646 (concluding that a loss of $1,556,000 would occur if
21 plaintiffs challenge to the contract in question was successful).  Similar analyses are
22 undertaken in Kaatz and California Commerce Casino.  In other words, a contract is not
23 subject to validation because it falls within a certain class of contracts, it is subject to
24 validation because there is a demonstrated impact of a challenge to the contract on the
25 income stream that supports the bond or debt.
26         In the instant case, there is an allegation that the Contract and Change Order are

"inextricably intertwined" with the income stream supporting payment of the bonds, but there is absolutely no offer of evidence to show how, *under the facts of this case*, a challenge to the validity of the Contract or Change Order will have any effect at all on the Hospital's income stream. The Project is funded, so far as the court can discern, from bonds that have already been sold and are to be repaid in part from revenues generated by operation of the Hospital, not from revenues that are confined to operation of the Project. Defendant does not allege the extent to which the Project, when completed, is expected to enhance the revenue stream produced by the Hospital, if at all. There is consequently no indication to what extent the revenue stream would be diminished by a delay caused by a challenge to the Contract, or that a challenge would cause any delay in Project completion or diminution of revenue at all.

Even if Defendant had presented facts to show how a delay caused by a challenge to the Contract or Change Order might have cause a diminution of the income stream at some time in the past, there is no indication of how a challenge to the Contract or Change Order now could possibly cause delay or a loss of income now. As facts now stand, if there is any delay, it has been caused by Plaintiff's non-performance, not by a challenge to the validity of the Contract or Work Order. If work is to resume, it will presumably resume as a result of a new construction contract that will be entered into by a different construction firm, and Plaintiff's suit does not challenge the validity of any third party contract that might later be executed.

The court's focus on the situation as it now stands is purposeful. Implicit in Defendant's argument is the proposition that, if the Contract or Change Order were subject to the validation procedure of section 860, et seq. at the inception of either, then both are subject to the restrictions of the validation procedure now, regardless of the current facts. The court finds this implicit argument unsupported by the authority reviewed, and further finds that the legal theory implicit in Defendant's argument would, if implemented, work a disservice on the policy purposes served by the validation procedure. Through the validation procedure,

8

the concerned citizen wishing to challenge the validity or wisdom of an agency action gives up substantial leeway in deciding when to bring an action so that the agency issuing bonds does not suffer undue financial impediment due to uncertainty as to the validity of the bond offering or uncertainty as to its ability to repay the bonds. The substantial restriction on the interested citizen's right to sue is justified by the public benefit that is realized. Conversely, it is difficult to justify restrictions on the right of an interested citizen to challenge the validity of a public action where there is no actual purpose to be served by the restriction. That is the case here.

The court is struck by the fact that in this case Plaintiff is not trying to challenge an agency improvement project or the funding thereof; Plaintiff is simply trying to defend against Defendant's claim against the performance bond. Similarly, Defendant is not an agency whose ability to fund or complete its project is being threatened by a challenge to the validity of its actions. Whether the Contract or Change Order might be challenged or ultimately found invalid is completely immaterial to project funding or project completion, so far as the court can tell. If the Project is currently delayed, it is delayed because of Plaintiff's non-performance, not because of any challenge to the Contract or Work Order. Defendant does not contend that its ability to generate revenues to pay the bonds depends on its ability to successfully make a claim against Plaintiff's performance bond.

California's validation process serves an important purpose, but does so at no small cost to concerned taxpayers. This court is disinclined to apply California's validation process in a situation where there is no discernable benefit to the important policy considerations served by the validation process.

Because the court finds California's validation procedure is inapplicable under the facts of this case and will deny Defendant's motion to dismiss on that basis, the court declines to address Plaintiff's alternative arguments in opposition to the motion to dismiss.

The court hereby grants Defendant's request for judicial notice to the extent that the

materials submitted support Defendant's factual allegations set forth in their motion to dismiss and response to Plaintiff's opposition to the motion to dismiss.

THEREFORE, for the reasons discussed, Defendant's motion to dismiss Plaintiff's complaint is hereby DENIED.

IT IS SO ORDERED.

**Dated:   January 31, 2008**                    /s/ Anthony W. Ishii
                                                UNITED STATES DISTRICT JUDGE